# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SHERA WOODBURY,

       Plaintiff,

       v.

VICTORY VAN LINES,
*d/b/a Great Nations Van Lines, LLC, now*
*Great Nation Moving, LLC* and
SHERIF YANZULOV, *a/k/a David Yanoff,*
*a/k/a Sherif Yanuzov*,

       Defendants.

Civil Action No. TDC-16-2532

## MEMORANDUM OPINION

Plaintiff Shera Woodbury, who is self-represented, has brought this action against her former employer, Victory Van Lines ("Victory"), owned by Great Nation Moving, LLC ("Great Nation"), and Great Nation's principal owner, Sherif Yanuzov,[1] alleging that she was subjected to discrimination on the basis of sex, national origin, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2012), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 to 12117.  Woodbury also alleges that her employer violated her right to privacy by taking a picture of her when she was unconscious, violated her freedom of speech by forcing her to vote in the 2012 presidential election, and subjected her to a hostile work environment after she threatened to notify authorities about suspected illegal activity.  Pending before the Court are Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, and Woodbury's Motion for Leave to File a Surreply.  Having reviewed the pleadings, briefs, and other submitted materials, the Court

---

[1] The Court uses the spelling provided in the affidavit submitted by Yanuzov.  ECF No. 20-1.

finds that no hearing is necessary.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.  Woodbury's Motion is DENIED.

## BACKGROUND

The following facts are presented in the light most favorable to Woodbury, the nonmoving party.

## I.    Discrimination Claims

Woodbury worked as a relocation specialist for Victory, a moving company, from March 2012 until she was terminated on April 4, 2014.  Woodbury is a woman, born in North America, who suffers from a neurological disorder that causes seizures and epilepsy.  She alleges that Victory discriminated against her based on these traits by subjecting her to unequal terms of employment and by terminating her employment.

Woodbury's job was to sell Victory's moving services.  For every booking she made, she received a three percent commission based on the booking's estimated price.  Her male colleague, who performed the same job, received a commission based on the actual cost of the moving services he booked, a price that was almost always higher than the estimate.  Thus, from March 2012 to March 2013, she was paid less than her male counterpart for the same work.  She also alleges that Victory forced her to use a separate entrance to the Victory office because she is a woman, but she does not provide a timeframe for this behavior.

On March 15, 2014, Woodbury told Defendant Yanuzov, Victory's owner and her immediate supervisor, that she would be resigning that December to start her own moving business.  Four other Victory employees, one of whom was Woodbury's husband, had started

their own moving businesses without any adverse action by Victory. In fact, Yanuzov had hosted a going-away part for Woodbury's husband.

Less than two weeks after Woodbury gave her notice, on March 26, 2014, Woodbury had a seizure in the Victory offices. She had a second seizure, again at work, on March 31, 2014. Following the second seizure, Yanuzov reached out to Woodbury by text message to schedule a meeting between them. At the ensuing April 4, 2014 meeting, Yanuzov fired Woodbury and explained that he was doing so because she planned to start her own moving business. When Woodbury protested that her husband had done the same thing and had not been terminated, Yanuzov replied, "[W]ell, you're not [him]." Compl. at 9, ¶ 17, ECF No. 1. Woodbury contends that of the several employees who had branched out to start their own businesses, she alone was fired, because she has a disability and because she, unlike the other employees, is of North American origin. Yanuzov is Bulgarian, and the other employees who left to start their own businesses were either Bulgarian or of a national origin that is not North American.

## II.    Additional Claims

In her Amended Complaint, Woodbury adds several causes of action. First, she asserts an invasion of privacy claim. During Woodbury's March 26, 2014 seizure, Yanuzov took a picture of her while she was unconscious. In that picture, "[h]er eyes were rolled back, she was wet, and her shirt was somewhat lifted." Compl. at 9, ¶ 13. Yanuzov showed the image to Woodbury, her husband, and several of Woodbury's coworkers. By doing so, Woodbury argues, Yanuzov "publicized" the image and "place[d] her in a false light." Pl's Resp. Mot. Dismiss ("Resp.") at 4–5, ECF No. 38. She also alleges that Yanuzov's actions were so upsetting that it caused her to suffer the second seizure.

Second, Woodbury alleges that Yanuzov made her pay raise contingent on voting for President Barack Obama during the 2012 election. When she went to vote, Woodbury was accompanied by a witness so that she could prove that she had selected the correct candidate. As she was not planning to vote, Woodbury argues that this conduct violated her right to freedom of speech.

Finally, Woodbury alleges that she was subjected to "a very hostile work environment" and the "threat of termination" after Yanuzov learned that she planned to report to United States Immigration and Customs Enforcement ("ICE") that his marriage to a U.S. citizen was a sham in that it was entered into for the purpose of securing immigration benefits. Am. Compl. at 2, ECF No. 22. She asserts that she "was going to whistleblow" on this illegal activity and seeks $250,000 in damages "for this violation of her rights as . . . an American who only was keeping the law first." *Id.*

## III. Procedural History

On June 13, 2014, Woodbury filed a charge of discrimination with the Montgomery County Office of Human Rights ("MCOHR"), which dual-filed her charge with the United States Equal Employment Opportunity Commission ("EEOC"). The MCOHR closed the case on June 23, 2015. The EEOC then adopted the MCOHR's findings and issued a right-to-sue letter on August 5, 2015. According to Woodbury, she did not receive this letter until April 14, 2016, when the EEOC responded to her inquiry about the status of her case. She filed suit in this Court 88 days later, on July 11, 2016.

Because Woodbury failed to serve Defendants in a timely manner, the case was dismissed on November 29, 2016. On December 2, 2016, Woodbury moved to reopen, explaining that her ex-husband had withheld her mail and that she had not received this Court's

orders regarding service. The case was reopened on December 5, 2016, and service was timely effected. Woodbury filed her Amended Complaint on February 27, 2017. The present causes of action are: sex and national origin discrimination in violation of Title VII; disability discrimination in violation of the ADA; invasion of privacy; a violation of Woodbury's First Amendment right to freedom of speech; and retaliation for reporting unlawful conduct.

## DISCUSSION

In their Motion, Defendants assert the following grounds for dismissal: (1) Title VII and the ADA do not give rise to claims against individual supervisors such as Yanuzov; (2) neither Title VII nor the ADA apply to Victory because Victory did not have at least 15 employees at the time of the alleged misconduct; (3) Woodbury has failed to state a claim for invasion of privacy under Maryland law; (4) Woodbury cannot assert a free speech claim against Defendants because they are not state actors; and (5) her whistleblower claim alleges a right not recognized by federal or state law.

## I.    Motion for Leave to File a Surreply

Woodbury moved for leave to file a surreply on October 30, 2017, over three months after the briefing on Defendants' Motion was otherwise completed. Her Motion provides no explanation for why additional briefing is warranted.

Local Rule 105.2(a) provides that surreply memoranda are not permitted unless otherwise ordered by the Court. Surreply briefs are generally disfavored in this District, *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013), but they may be permitted "when the moving party would be unable to contest matters presented to the Court for the first time in the opposing party's reply," *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009). A review of Defendants' reply memorandum reveals only one new argument: that

Woodbury may not use her memorandum in opposition to the Motion to amend the Complaint. The Court finds it unnecessary to grant additional briefing to hear from Woodbury on this axiomatic standard.  Woodbury's Motion is therefore denied.

## II.      Motion to Dismiss or, in the Alternative, for Summary Judgment

### A.      Legal Standards

For all but one of Woodbury's claims, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6).  To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

For their assertion that Woodbury's Title VII and ADA claims must be dismissed because Victory did not have 15 or more employees during the relevant time period, Defendants rely on exhibits attached to their Motion, including an affidavit from Yanuzov and two years' worth of Victory's employment records.  Generally, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint.  Documents attached to the complaint or motion may be considered if "they are integral to the complaint and authentic."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  The court may also

take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Should a court consider exhibits that do not fall into these categories, it must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d). A court may convert a motion to dismiss into one for summary judgment, and thus consider exhibits and evidence outside the pleadings, only if the nonmoving party has had "a reasonable opportunity to present all the material that is pertinent to the motion." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating a Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Id.*

The notice requirement is not onerous, requiring only that the nonmoving party be aware that material outside the pleadings is pending before the Court. *Id.* The reasonable opportunity requirement is more demanding. Typically, to show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002); *Hamilton v. Mayor & City Council of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). Even in the absence of a Rule 56(d) affidavit, however, "a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Sager v. Housing Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012) (quoting 5C Wright & Miller, Federal Practice & Procedure

§ 1366 (3d ed. 2004, 2011 Supp.)).  This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.*

## B.    Discrimination Claims

### 1.    Yanuzov

Yanuzov has moved to dismiss the Title VII and ADA claims against him on the grounds that neither statute permits individual liability against supervisors.  He is correct.

The United States Court of Appeals for the Fourth Circuit has held that Title VII creates a cause of action against employers, not individual supervisors.  *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998).  Individuals are thus immune from suit unless they themselves qualify as an "employer" under the statute.  *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).

As for the ADA, "[b]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases."  *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001).  Title VII's definition of "employer," which provides the basis for the statute's reach and for the unavailability of individual liability, is nearly identical to that of the ADA.  *Compare* 42 U.S.C. § 2000e(b) *with* 42 U.S.C. § 12111(5)(A).  In light of this congruence and the Fourth Circuit precedent that interprets Title VII's definition of "employer" as excluding individual supervisors, there is no reason to read the ADA's provision any more broadly.  Indeed, although the Fourth Circuit has not specifically addressed whether the ADA allows for individual liability, several other circuits have held that it does not.  *See Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 51–52 (1st Cir. 2011); *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007); *Walsh v. Nev. Dep't of Human*

*Res.*, 471 F.3d 1033, 1037–38 (9th Cir. 2006); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1281–82 (7th Cir. 1995); *see also Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA").  Multiple district courts in this circuit have agreed.  *See, e.g.*, *Stephens v. Kay Mgmt. Co., Inc.*, 907 F. Supp. 169, 173–74 (E.D. Va. 1995); *see also Stanley v. Gaston Cty. Dep't of Health and Human Servs.*, No. 3:15-CV-00551-FDW-DCK, 2016 WL 5867431, at *4 (E.D.N.C. Oct. 6, 2016); *White v. Home Depot, U.S.A., Inc.*, No. DKC 13-0624, 2013 WL 4501328, at *1 n.2 (D. Md. Aug. 21, 2013).  Accordingly, Yanuzov is not liable under Title VII or the ADA based on his role as Woodbury's supervisor.

Nor is Yanuzov an individual who meets the definition of an "employer" on his own. Victory is not a sole proprietorship, such that it and Yanuzov would be legally treated as one and the same.  Rather, it is owned by Great Nation Moving, LLC, which makes Great Nation, not Yanuzov, Woodbury's employer.  Accordingly, both the Title VII and ADA claims against Yanuzov will be dismissed.

### 2.    Victory Van Lines

Victory seeks dismissal of, or summary judgment on, the discrimination claims on the grounds that Title VII and the ADA apply only to employers with "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 2000e(b); *see* 42 U.S.C. § 12111(5)(A).  The definition of "employee" under Title VII and the ADA does not include independent contractors.  42 U.S.C. § 2000e(f) (2012); 42 U.S.C. § 12111(4); *see Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 259 (4th Cir. 1997). Whether workers are independent contractors or employees is not based on their formal

designation by the employer; rather, it is a question that requires application of a multi-factor, fact-intensive test. *See Farlow v. Wachovia Bank*, 259 F.3d 309, 312–13 (4th Cir. 2001). Victory argues that Woodbury's discrimination claims against it must be dismissed because it did not employ, within the meaning of the statute, 15 or more people during 2013 or 2014.

In the Amended Complaint, Woodbury alleged that Victory had more than 15 employees. Woodbury asserted specific facts about the size of Victory's labor force, such as "[o]n an average day at the defendants['] office, there were at least 15–18 movers (employees) scheduled," and once Yanuzov turned an applicant away because there were "no available . . . position[s] due to the 18 that were already on staff." Am. Compl. at 1. Based on these allegations, there is no basis to dismiss the Amended Complaint for failure to allege that Victory had enough employees to constitute an "employer" under Title VII and the ADA.

Victory, however, attached to its Motion an affidavit from Yanuzov stating that, even if all of Victory's independent contractors are assumed to be employees, Victory had only 13 employees in 2014 who worked for 20 or more calendar weeks. Yanuzov further states that Victory had only 12 employees who worked for a sufficient number of weeks in 2013, again assuming that all independent contractors are actually employees. Yanuzov attached various payroll and tax documents in support of these assertions. Because the affidavit and exhibits are not integral to the Amended Complaint, the Court may not rely on them without converting the Motion into a motion for summary judgment. Fed. R. Civ. P. 12(d).

A court may convert a motion to dismiss into one for summary judgment only if the nonmoving party has had a "reasonable opportunity to present all the material" that is pertinent to the motion, consisting of (1) notice to the nonmoving party that the court is treating a Rule 12(b)(6) motion as a motion for summary judgment; and (2) a "reasonable opportunity for

discovery" to obtain information essential to oppose the motion. *Gay*, 761 F.2d at 177 (citation omitted). The notice requirement is not onerous, requiring only that the nonmoving party be aware that material outside the pleadings is pending before the Court. *Id.* Here, Woodbury had notice that these exhibits could form the basis for the Court's decision. Defendants titled their Motion as seeking, in the alternative, summary judgment, and Woodbury responded with a memorandum explicitly opposing the "Motion to Dismiss or, in the Alternative, for Summary Judgment." ECF No. 38.

To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party generally must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d 214 at 245; *Hamilton*, 807 F. Supp. 2d at 341. Although, Woodbury, who is *pro se*, did not file a Rule 56(d) affidavit, that oversight is not necessarily dispositive. *See Harrods*, 302 F.3d at 244 ("[I]n some cases courts have held that summary judgment was premature even when the opposing party failed to file a [Rule 56(d)] affidavit."). Woodbury responded to Victory's submitted exhibits by asserting in her brief that she knows that Victory has 20 to 30 employees because she "has personally been responsible" for scheduling them, arguing that Yanuzov and his wife should be counted as employees, and stating that Victory left out relevant documents. Resp. at 2–3.

Woodbury's assertions in the Amended Complaint and her brief on the Motion reflect that Woodbury had personal knowledge of the workforce at Victory from her role in scheduling their assignments, and that based on that knowledge she disagrees with Victory's count. Particularly where she has further argued that the provided documents are incomplete, it would be inappropriate to convert Defendants' Motion into one for summary judgment absent an

opportunity for discovery on this issue. Accordingly, the Court will decline to consider the attached exhibits and treat the motion as one for summary judgment. The Court therefore will deny Defendants' motion to dismiss the Title VII and ADA claims against Victory and will grant Woodbury leave to engage in limited discovery for the purpose of determining the number of Victory employees in 2013 and 2014.

### 3. Filing Deadline

In their Motion, Defendants further request that if Woodbury's Title VII and ADA claims are allowed to proceed, they should be allowed to take discovery regarding when she received the EEOC right-to-sue letter and what facts, if any, prevented her from receiving it at an earlier date. Such discovery would be sought in order to support a claim that the Title VII and ADA claims are time-barred. This request will be granted.

Before suing in federal court, a prospective Title VII or ADA plaintiff must first file an administrative charge with the EEOC or an appropriate state or local agency. 42 U.S.C. § 2000e-5(b), (f)(1); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508–09 (4th Cir. 2005); *Davis v. Va. Commw. Univ.*, 180 F.3d 626, 628 n.3 (4th Cir. 1999). If the EEOC declines to take action on the charge, it issues a "right-to-sue letter" informing the plaintiff of its decision and the opportunity to file suit. 42 U.S.C. § 2000e–5(f)(1); 29 C.F.R. § 1601.28. The plaintiff has 90 days following the receipt of this letter to file suit. 42 U.S.C. § 2000e–5(f)(1). This deadline is not jurisdictional but is instead treated as a statute of limitations subject to equitable tolling. *See Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987); *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426–27 (D. Md. 2013); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982) (holding that the deadline to file an EEOC charge is not jurisdictional and is subject to equitable tolling).

In the Fourth Circuit, the limitations period starts when the right-to-sue letter is delivered to the plaintiff's home, not when the plaintiff actually receives it. *Harvey*, 813 F.2d at 654. However, "district courts should conduct a thorough examination of the facts to determine if reasonable grounds exist for an equitable tolling of the filing period." *Id.*; *see also Watts-Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993). If there is no evidence regarding when the plaintiff received the right-to-sue letter, the court presumes receipt three days after it was mailed, pursuant to Federal Rule of Civil Procedure 6(d). *Weathersbee*, 970 F. Supp. 2d at 427; *see also Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984); *Nguyen v. Inova Alexandria Hosp.*, No. 98-2215, 1999 WL 556446, at *3 (4th Cir. July 30, 1999).

The EEOC issued Woodbury's right-to-sue letter on August 5, 2015, such that it presumptively arrived on August 8, 2015. Woodbury, however, states that she did not receive this letter until April 14, 2016, which appears to be after she contacted the EEOC to check on the status of her case. Although the current record is unclear, Woodbury may have moved between filing the charge in June 2014 and the issuance of the right-to-sue letter in August 2015. As she did not file suit in this Court until July 11, 2016, well more than 90 days after she presumptively would have received the right-to-sue letter, her Title VII and ADA claims will be dismissed unless the actual date of receipt was after April 12, 2016, or there is a basis for equitable tolling of the 90-day period. *See Coleman v. Talbot Cty. Detention Ctr.*, 242 F. App'x 72, 74 (4th Cir. 2007) (per curiam) (holding that the 90-day period should be equitably tolled when the plaintiff had moved after filing the EEOC charge, diligently checked her mail at her former address, and expected the EEOC to send correspondence to her attorney). Thus, discovery on this limited issue is warranted to enable the Court to "conduct a thorough examination of the facts to

determine if reasonable grounds exist for an equitable tolling of the filing period." *Harvey*, 813 F.2d at 654.

### C.    Invasion of Privacy

In asserting a claim of invasion of privacy, Woodbury alleges that Yanuzov took a photograph of her while she was unconscious and then showed that picture to her, her husband, and several coworkers. Defendants seek dismissal for failure to state a claim under Maryland law.

Maryland recognizes the tort of invasion of privacy and has cited with approval the four different forms of this claim set forth in the Restatement of Torts. *Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 450–51 (Md. 1984). These four versions are: (a) "unreasonable intrusion upon the seclusion of another," (b) "appropriation of the other's name or likeness," (c) "unreasonable publicity given to the other's private life," or (d) "publicity that unreasonably places the other in a false light before the public." *Id.* (quoting Restatement (Second) of Torts § 652(A) (Am. Law Inst. 1977)). As the alleged facts do not involve appropriation of Woodbury's name or likeness, the Court will address the remaining three versions.

To assert an intrusion-upon-seclusion claim, a plaintiff must show that the defendant intentionally intruded "upon the solitude or seclusion of another" and that the intrusion "would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (Am. Law Inst. 1977). There is no liability for observing someone in a public place. *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1116–17 (Md. Ct. Spec. App. 1986). To maintain this claim, therefore, Woodbury must have alleged sufficient facts to show that she had a reasonable expectation of privacy in the Victory offices where she was photographed. The Court finds that she failed to do so.

Ordinarily, an employee does not have a reasonable expectation of privacy in the workplace. *See Marrs v. Marriott Corp.*, 830 F. Supp. 274, 283–84 (D. Md. 1992) (finding that an employee had no reasonable expectation of privacy in an open office); *Kemp v. Block*, 607 F. Supp. 1262, 1264 (D. Nev. 1985) (finding that a coworker did not have an expectation of privacy as to other coworkers who shared the work space). Woodbury did not provide any detail in her Complaint or Amended Complaint on specifically where within the Victory offices she was when she had the seizure and became unconscious and thus has failed to allege an unreasonable intrusion upon seclusion. In her memorandum in opposition to the Motion, she states that "[t]he seizure took place in a room with a lock on the door," and that "[t]he only way to enter the workplace is by a key and door code." Resp. at 4–5. Even if the Complaint were to be amended to add these facts, they would not be sufficient to state a plausible claim. Even if her workplace had a key and door code restricting access, Woodbury did not allege that Yanuzov and the other coworkers lacked access to the work space generally or the room in which the seizure occurred. She did not allege that the room was her private office, a private bathroom, or that the door to the room was locked at the time of the seizure. She has not even alleged that she was alone in the room at the time of the seizure. Thus, Woodbury has not asserted an intrusion-upon-seclusion claim arising from this incident.

The remaining two versions of an invasion of privacy claim—unreasonable publicity to private facts and portraying the plaintiff in a false light—both require "publicity," meaning that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a. "[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or

even to a small group of persons."  *Id.*  Here, Woodbury alleges that Yanuzov showed the photograph to six people:  herself; her husband, a former Victory employee; and four other Victory employees.  This group is too limited, and Yanuzov's means of communication too private, to meet the publicity requirement, especially where the photograph was shown only to persons associated with Victory.  *See Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 733 (D. Md. 2009) (holding that accusations of use of a stolen credit card made in front of a small group of individuals in a store did not constitute publicity for purposes of a false light invasion of privacy claim); *see also Wells v. Thomas*, 569 F. Supp. 426, 437 (E.D. Pa. 1983) (holding that the publicity element was not met where facts were verbally communicated to employees at a staff meeting and in conversations between employees); *Beard v. Akzona, Inc.*, 517 F. Supp. 128, 132–33 (E.D. Tenn. 1981) (holding that publicity element was not met when embarrassing facts about one employee were disclosed to five other employees in management).

Finally, Woodbury's false light invasion of privacy claim fails for an additional reason.  Such a cause of action protects "the interest of the individual in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as [s]he is."  Restatement (Second) of Torts § 652E cmt. b.  Woodbury has asserted in a conclusory fashion that the photograph "place[d] her in a false light," Resp. at 5, but has not asserted facts showing how the image "attribute[d] to [her] characteristics, conduct or beliefs that are false," as is required to maintain this claim.  *Id.*  Woodbury's invasion of privacy claim will therefore be dismissed.

**D.    First Amendment**

In her Amended Complaint, Woodbury alleges that Yanuzov pressured her, using a financial incentive, to vote for President Barack Obama during the 2012 presidential election.

She seeks damages for violation of her "freedom of speech" because she did not want to vote at all. Am. Compl. at 2. Defendants argue that this claim should be dismissed because they are not state actors.

"[M]ost rights secured by the Constitution are protected only against infringement by governments." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). Therefore, when private persons are sued for constitutional violations, courts require "as a prerequisite to liability 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). There are four circumstances where such attribution is appropriate:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (quoting *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993)). None of these situations apply here.

To the extent that Woodbury was attempting to assert a claim of employment discrimination based on political beliefs, that claim, too, is unavailable. While "Congress has extended numerous constitutionally inspired protections to members of the private workplace," it "notably has refrained from extending free speech rights to the private work force." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 819 (4th Cir. 2004). Specifically, Title VII has no proscription against private employers making the terms and conditions of employment contingent on political beliefs or behavior. *See* 42 U.S.C. § 2000e-2(a). Nor is political

expression protected under Maryland's employment discrimination law. *See* Md. Code Ann., State Gov't § 20-606 (2015). Woodbury's free speech claim will therefore be dismissed.

### E. Whistleblower Claim

Finally, Woodbury has asserted that she is entitled to damages because, when Yanuzov learned that she intended to tell ICE that he had entered into a sham marriage for immigration purposes, he threatened to fire her and otherwise established a "hostile work environment" at Victory. Am. Compl. at 2. Defendants argue that this is not a colorable claim and should be dismissed.

It is unclear what statute, if any, Woodbury relies on for this claim. The term "hostile work environment" arises out of employment discrimination law, but Woodbury has not alleged in the Amended Complaint that this hostile work environment was due to Woodbury's membership in a protected class recognized under Title VII. Alerting the authorities about immigration law violations does not qualify as "protected activity" shielded by Title VII's anti-retaliation provisions, because such activity consists of complaining of violations of Title VII, not opposing immigration fraud. *See* 42 U.S.C. § 2000e-3(a); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281–82 (4th Cir. 2015) (stating that Title VII prohibits employers from retaliating against employees who oppose their employer's Title VII violations).

To the extent that Woodbury was attempting to assert a whistleblower claim, she has cited no federal law, and this Court is aware of none, that provides whistleblower protection against retaliation by private employers for reporting immigration fraud. As for state law, Maryland has a tort of wrongful discharge for at-will employees who have been terminated because they "*reported a suspected crime* to the appropriate law enforcement or judicial officer." *Wholey v. Sears Roebuck*, 803 A.2d 482, 495–96 (Md. 2002). Woodbury, however, has never

alleged that she was fired because she reported her suspicions to ICE. Therefore, this claim will be dismissed as well.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. All claims except for the Title VII and ADA claims against Victory Van Lines are dismissed. Plaintiff's Motion for Leave to File a Surreply is DENIED. A separate Order shall issue.

Date: December 21, 2017

THEODORE D. CHUANG
United States District Judge