# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SHERA WOODBURY,

      Plaintiff,

      v.

VICTORY VAN LINES,
*d/b/a Great Nations Van Lines, LLC, now
Great Nation Moving, LLC*,

      Defendant.

Civil Action No. TDC-16-2532

---

## MEMORANDUM OPINION

Plaintiff Shera Woodbury, who is self-represented, has brought this action against her former employer, Victory Van Lines ("Victory"), owned by Great Nation Moving, LLC ("Great Nation"), and Great Nation's principal owner, Sherif Yanuzov,[1] alleging that she was subjected to employment discrimination on the basis of sex, national origin, and disability. On December 21, 2017, this Court issued a Memorandum Opinion dismissing all of Woodbury's claims except those brought against Victory pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2012), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 to 12117 (2012). Pending before the Court is Victory's Motion for Summary Judgment on the grounds that it was not a "covered" employer under Title VII and the ADA because it did not have 15 or more employees at the time of the alleged discrimination. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion for Summary Judgment is DENIED.

---

[1]   The Court uses the spelling provided in the affidavit submitted by Yanuzov.

## BACKGROUND

Woodbury worked as a relocation specialist for Victory, a moving company, from March 2012 until she was terminated on April 4, 2014. Woodbury is a woman, born in North America, who suffers from a neurological disorder that causes seizures. She alleges that Victory discriminated against her based on these traits by subjecting her to unequal terms of employment and by terminating her employment. The Court has set forth the factual and procedural background for Woodbury's allegations in its December 21, 2017 Memorandum Opinion on the Motion to Dismiss. *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 690-91 (D. Md. 2017).

On April 18, 2017, Yanuzov and Victory filed a Motion to Dismiss or, in the Alternative, for Summary Judgment in which Defendants asserted, as relevant here, that the Title VII and ADA claims should be dismissed because Victory is not an employer under those statutes because it lacked 15 employees at the time of the alleged discrimination. Attached to that Motion were certain tax and pay records and an affidavit from Yanuzov, which Defendants offered as evidence that Victory had fewer than 15 employees in the years 2013 and 2014. In her memorandum in opposition to the motion, Woodbury asserted that she knows that Victory had 20 to 30 employees because she "has personally been responsible" for scheduling them, argued that Yanuzov and his wife should be counted as employees, and claimed that Victory left out relevant documents from its submission. Opp'n Mot. Dismiss at 2-3, ECF No. 38. The Court declined to consider the submitted documents, *see* Fed. R. Civ. P. 12(d), denied the Motion to Dismiss as to that argument, and granted the parties limited discovery on the number of Victory employees in 2013 and 2014.

After the completion of the limited discovery period, Victory filed the pending Motion for Summary Judgment on the grounds that Victory did not have 15 employees and thus is not

subject to liability under Title VII or the ADA. In support of the Motion, Victory has submitted an affidavit from Yanuzov stating that Victory has never employed 15 or more individuals at the same time; Yanuzov never turned away any prospective employees because Victory was fully staffed; and Yanuzov and his wife, Milena Zaimova, are the sole owners of Victory. Victory has also submitted tax and pay records relating to 20 individuals for 2013 and 16 individuals for 2014. The records reveal that for 2013, 12 individuals worked for Victory for 20 or more weeks, and that for 2014, 13 individuals worked for Victory for that length of time or more. In her deposition testimony, however, Woodbury stated that she personally observed at least 10 additional employees who worked at Victory for more than 20 weeks in the relevant timeframe, six of whom she identified by first name—"Vasko," "Teti," "Stanko," "Emmanuel," "Marlo," and "David"—and four of whom she pointed out in photographs but could not identify by name.

## DISCUSSION

The sole issue in Victory's Motion for Summary Judgment is whether Victory is a covered employer under Title VII and the ADA based on its number of employees in 2013 and 2014. Victory asserts that it is not a covered employer because the pay records definitively establish that it had fewer than 15 employees who worked more than 20 weeks during both years; Victory's owners are properly not counted as employees for purposes of this calculation; and Woodbury's asserted facts and evidence are insufficient to create a genuine dispute on the number of Victory employees and the number of weeks they worked in the relevant years. Woodbury counters that there is a genuine issue of material fact regarding the number of employees based on her personal observations during her tenure at Victory, because Victory has falsified and omitted employees from its pay records, and because the EEOC's alleged finding that Victory had more than 15 employees should bind this Court.

3

Victory also argues that, if the Court finds that Victory is a covered employer, its Motion should still be granted on the ground that Victory articulated a legitimate, non-discriminatory reason for terminating Woodbury's employment. Because discovery to date has been limited to the issue of the number of employees at Victory, the Court will not consider this argument.

## I.       Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.      EEOC Finding

The Court begins by addressing Woodbury's argument that the Court is bound by a prior determination by the EEOC that Victory had 15 or more employees in 2013 or 2014. In asserting this argument, Woodbury relies on the Dismissal and Notice of Rights Letter ("Right to Sue Letter"), issued by the EEOC on August 5, 2015, which stated that the EEOC closed its file on Woodbury's charge because it had "adopted the findings of the state or local fair employment practices agency that investigated this charge." Right to Sue Letter at 2, Opp'n Mot. Dismiss Ex.

1, ECF No. 17-1. Woodbury argues that had the EEOC concluded that her case could not proceed because Victory had less than 15 employees, the Right to Sue Letter would have stated that conclusion, such as by checking the box noting that the case was closed because "[t]he Respondent employs less than the required number of employees or is not otherwise covered by the statutes." *Id.* The Right to Sue Letter, however, does not purport to include an exhaustive list of the reasons why the EEOC could have closed its investigation into Woodbury's claims. In fact, the Right to Sue Letter references the fact that Woodbury's charge had been filed with the Montgomery County Office of Human Rights ("MCOHR"), and that the EEOC had simply adopted the MCOHR's findings without necessarily conducting an independent investigation. Thus, it is not reasonable to infer that the EEOC made a finding on whether Victory had 15 or more employees. Moreover, where Woodbury has not submitted any records reflecting MCOHR's specific findings, the Court lacks a basis to conclude that the MCOHR made a finding whether Victory had 15 or more employees.

Even if Woodbury had shown that the EEOC or MCOHR had made a finding on the number of Victory employees during the relevant time period, Victory is correct that such a finding "would be, at best, a tentative conclusion." Reply Mot. Summ. J. at 4, ECF No. 63. Indeed, an EEOC Right to Sue letter does not resolve issues with finality: it informs the charging party that the EEOC has found no violation of law but that the charging party may nevertheless file suit seeking an independent determination by a federal court. *See* EEOC Form 161 (rev. Nov. 2009) (stating that, despite the EEOC's failure to find reasonable cause, the petitioner retains the right to "pursue [the] matter further" by filing a lawsuit within 90 days). Notably, the United States Court of Appeals for the Fourth Circuit has held that an EEOC Letter of Determination of Reasonable Cause, a separate form letter issued when the EEOC finds

reasonable cause to conclude that discrimination has occurred, is "merely preparatory to further proceedings." *Georator Corp. v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979) (stating that an EEOC determination of reasonable cause, standing alone, "is lifeless, and can fix no obligation nor impose any liability on [the employer]"); *see EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir. 1996) (stating that an EEOC's determination "is only an administrative prerequisite to a court action and has no legally binding significance in the subsequent litigation"). EEOC investigatory findings simply are not binding on federal courts in the private employment context. *See, e.g.*, *Georator Corp*., 592 F.2d at 768-69 (stating that the EEOC's determination of reasonable cause, while final, lack any binding effect); *Moore v. Devine*, 780 F.2d 1559, 1562 (11th Cir. 1986) (stating that the EEOC lacks the power to order remedial action in cases of private-sector employment discrimination, so the issue of the binding nature of an EEOC decision favorable to a private-sector employee never actually arise); *McClure v. Mexia Indep. Sch. Dist.*, 750 F.2d 396, 400 (5th Cir.1985) (noting that "EEOC determinations and findings of fact" are "not binding on the trier of fact").

Accordingly, there is no evidence that the EEOC or the MCOHR made any determination as to the number of Victory employees in 2013 or 2014 and, even if either agency had, such a finding would not override this Court's independent review of the evidence presented by the parties. Woodbury's reference to the Right to Sue Letter therefore does not provide a basis upon which to deny the Motion for Summary Judgment.

## III.     Number of Employees

In seeking summary judgment, Victory argues that neither Title VII nor the ADA apply to it because Victory had fewer than 15 employees during the years 2013 and 2014. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen

or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The ADA contains a substantively identical definition. 42 U.S.C. § 12111(5)(A). The United States Supreme Court has held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006); *see also Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases."). Accordingly, a plaintiff must establish that the defendant employer had the threshold number of employees to be subject to the requirements of Title VII and the ADA in order to prevail on a discrimination claim under those statutes. *See Arbaugh*, 546 U.S. at 515-16.

Woodbury does not dispute that Title VII and the ADA would not apply to Victory if it had fewer than 15 employees in 2013 or 2014. She also does not dispute that 2013 and 2014 are the relevant years of inquiry in this case, given that the alleged discriminatory acts occurred in 2014, Woodbury was fired in 2014, and Woodbury filed her charge of discrimination in June 2014. Instead she argues that there is a genuine issue of material fact as to whether Victory employed fewer than 15 individuals in the years 2013 and 2014.

### A.     Pay Records

Victory has submitted pay records which, it asserts, establish that it had fewer than 15 employees in the relevant years. Courts generally use the "payroll method" as a starting point to evaluate the number of employees that a defendant employer has for purposes of Title VII or the ADA. *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997). The "payroll method"

directs that, on any given day, all the individuals with whom an employer has an employment relationship may qualify as "employees" of that employer. *Id.* at 206. Thus, if an individual appears on the employer's pay records for a particular date and receives a paycheck covering a time period including that date, the person would qualify as an employee regardless of whether he or she actually worked on that date. *Id.* To qualify as one of the requisite 15 employees to establish that an employer is subject to Title VII and the ADA, an individual must be employed, according to the payroll method and common law principles of agency and control, during "each working day in each of 20 or more calendar weeks" in the relevant year. 42 U.S.C. § 2000e(b).

An individual's appearance in the employer's pay records, however, is not necessarily dispositive: in addition to the payroll method, courts also consider principles of control and the common law of agency when determining whether a particular individual is an "employee" under the relevant statutes. *See Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 448 (2006) (stating that the common law element of "control" over a worker should serve as the "principal guidepost" for determining whether an individual qualifies as an "employee" under the ADA). Thus, "an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law would not count" toward the minimum threshold of employees. *Walters*, 519 U.S. at 211-12. The reverse is also true, as an individual who has a traditional employment relationship with the employer but who does not appear on the payroll, such as one who receives compensation in cash or "under the table," would still count as an employee under principles of control and the common law of agency. *See Clackamas*, 538 U.S. at 448 (stating that the "common law's definition of the master-servant relationship" provides guidance in identifying which individuals qualify as employees); *accord Jones v. Midlands Neurology & Pain Assocs., P.A.*, No. 3:11-2623-CMC-SVH, 2012 WL 2917057, at *2-3 (D.S.C.

May 3, 2012) (holding that the plaintiff's affidavit stating that the defendant had additional employees not listed in pay records, including several paid "under the table," created a genuine issue of material fact precluding summary judgment for the defendant), *report and recommendation adopted*, No. 3:11-2623-CMC-SVH, 2012 WL 2913224 (D.S.C. July 17, 2012). Accordingly, while the Court begins its analysis by applying the payroll method, it is not necessarily dipositive on the issue of the number of Victory employees for purposes of Title VII and the ADA.

In accordance with the payroll method, Victory has provided tax documents and pay records for the years 2013 and 2014. For the year 2013, the records reflect that Victory paid wages to a total of four employees who received IRS Form W-2 from Victory ("W-2 employees") and contractor fees to a total of 16 independent contractors who received IRS Form 1099 from Victory ("1099 contractors"). For the year 2014, the records reflect that Victory paid wages to a total of four W-2 employees and contractor fees to a total of 12 1099 contractors. Although Woodbury has asserted that the workers classified as independent contractors are actually employees, the Court need not address that issue because Victory has conceded that, for purposes of the analysis of the Motion, all of the 1099 contractors should be treated as W-2 employees.

With this assumption, the pay records reveal that Victory had 20 employees in 2013 and 18 employees in 2014. Both of these numbers exceed the requisite 15 employees to qualify as an employer under Title VII and the ADA. Victory, however, asserts that the records further reveal that not all of these personnel worked the requisite 20 weeks in a given year to qualify as employees. 42 U.S.C. § 2000e(b).

## 1.    **2013**

Victory argues that, for the year 2013, the following eight employees, out of the 20 listed in the pay records for that year, failed to meet the 20-week threshold:  Samuel Amaya, William Alvarez Armando, Dusan Deletic, Robert W. Elmore, Michael F. Heffernan, Yonis Melendez Sales, Robert N. Scribner, and Vasie Yosifou.  Thus, in his affidavit, Yanuzov states that Victory had "no more than twelve (12) total employees in 2013, even if all workers designated as 1099 independent contractors are considered 'employees' for the purposes of this inquiry."  Yanuzov Aff. ¶ 9, Mot. Summ. J. Ex. A, ECF No. 60-1.  The Court's independent review of the submitted records corroborates this statement.  Accordingly, Victory's records, along with Yanuzov's supporting affidavit, appear to establish that only 12 Victory employees worked 20 weeks or more in 2013.

Of the eight employees who failed to meet the 20-week threshold, Woodbury offers testimony regarding only Heffernan and Deletic.  Regarding Heffernan, Woodbury testified in her deposition that he was employed by Victory for only a year or less, that she was not sure of his specific dates of employment, and that he quit sometime in 2012.  She therefore has not created a genuine dispute of material fact as to the number of weeks Heffernan worked in 2013 or 2014.

As for Deletic, who is Woodbury's ex-husband, Woodbury testified that he began work with Victory some time before March 25, 2012 and that, based on the dates of their birthdays and anniversary, Deletic was still employed by Victory in June 2013.  This testimony is largely consistent with the pay records, which show that Deletic received a paycheck on May 24, 2013—just over 20 weeks into the calendar year.  Although the pay records show no other paychecks issued to Deletic during 2013, Woodbury testified that up to the point of his

departure, Deletic was a foreman for Victory who worked full time, at least 40 hours per week. As Deletic's wife at the time, she would have personal knowledge of his work schedule. She also noted that he did not have legal immigration status. Thus, Woodbury's testimony has created a genuine issue of material fact whether Deletic actually was an employee for the requisite 20 weeks in 2013. However, Deletic would only raise the count of Victory employees in 2013 from 12 to 13, too few to render Victory a "covered employer" under Title VII and the ADA. Thus, the Court's analysis of Woodbury's arguments relating to 2013 must continue.

### 2. 2014

Of the 16 workers identified in the 2014 pay records, Victory asserts that three failed to meet the 20-week threshold: Woodbury, Javier G. Martinez, and RoseMary McBath. In addition to the pay records, Yanuzov's affidavit states that Victory had "no more than thirteen (13) total employees in 2014, even if all workers designated as 1099 independent contractors are considered 'employees' for the purposes of this inquiry." Yanuzov Aff. ¶ 8. The Court's independent review of the submitted records corroborates the conclusion that neither Woodbury nor Martinez worked 20 weeks at Victory in 2014. In Woodbury's deposition testimony, she conceded that she was fired on April 4, 2014, just 13 weeks into the calendar year, and she never mentioned Martinez or McBath. Accordingly, she has not raised a genuine dispute of material fact as to the number of weeks worked by Victory's employees in 2014.

However, upon consideration of the pay records, McBath could arguably be deemed to have spent 20 weeks as an employee in 2014. The records show that McBath received 10 paychecks in 2014 on the following dates: August 6, 2014, August 20, 2014, September 8, 2014, September 19, 2014, October 7, 2014, October 21, 2014, November 7, 2014, November 21, 2014, December 5, 2014, and December 23, 2014. The records therefore reveal that, at a

minimum, McBath was in Victory's pay records from August 6, 2014 through December 23, 2014, consisting of 19 weeks and 4 days of work. However, the August 6, 2014 paycheck likely provides wages for work performed before that date, which could put her over the 20-week threshold. Nevertheless, even with McBath counted as an employee, the pay record would only reflect 14 employees in 2014. Thus, Woodbury has not created a genuine issue of material fact whether the pay records reveal that Victory had 15 employees who worked 20 or more weeks in 2014.

### B.    Owners

Woodbury argues that Victory's calculation of the number of its employees from the pay records is inaccurate because it does not count Yanuzov and his wife, Zaimova, as employees. For 2013, because of the genuine dispute of material fact as to the number of weeks worked by Deletic, if both are counted as employees, the total would be 15 employees that year. For 2014, because of the genuine dispute of material fact as to the number of weeks worked by McBath, if even one is counted as an employee, the total would be 15 employees for that year. Victory counters that Yanuzov and Zaimova are properly classified as owners, not employees, during 2013 and 2014, and thus do not count toward the requisite 15 employees.

In *Clackamas*, the Supreme Court adopted from the EEOC Compliance Manual a non-exhaustive, six-factor test to determine whether a shareholder-director of a corporation is an employee for purposes of Title VII. 538 U.S. at 449-50. The six factors include:

1.  Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
2.  Whether and, if so, to what extent the organization supervises the individual's work;
3.  Whether the individual reports to someone higher in the organization;
4.  Whether and, if so, to what extent the individual is able to influence the organization;

5. Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; and

6. Whether the individual shares in the profits, losses, and liabilities of the organization.

*Id.* The test focuses on the "common-law touchstone of control" and assesses, through these factors, whether an individual "is subject to the organization's control," or "whether the individual acts independently and participates in managing the organization." *Id.* at 449. All incidents of the individual's relationship with the organization must be considered, with "no one factor being decisive." *Id.* at 451 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)). In *Clackamas*, the issue was whether "four physicians actively engaged in medical practice" and simultaneously serving as "shareholder and directors of a professional corporation" should be counted as "employees" for purposes of the ADA. *Id.* at 442, 451. Without deciding the issue, the court noted that the facts that the physicians controlled the operation of their clinic, shared the profits, and were personally liable for malpractice claims weighed in favor of a finding that they were not employees for purposes of the ADA. *Id.* at 451.

The *Clackamas* test has been applied to individuals with ownership interests outside the context of shareholder-directors of a professional corporation. *See Solon v. Kaplan*, 398 F.3d 629, 632-33 (7th Cir. 2005) (stating that *Clackamas* "is not limited to the narrow question of whether a share-holder director is an employee" and noting that the six factors "provide guidance in resolving the more general issue of whether an individual is an employee" or an employer); *Walls v. Avpro, Inc.*, No. JFM-04-3042, 2005 WL 855931, at *2 n.1 (D. Md. Apr. 14, 2005) (citing *Solon* for the principle that the *Clackamas* test can be used to determine whether certain individuals are owners or employees beyond the context of a professional corporation), *aff'd*, 162 F. App'x 252 (4th Cir. 2006). Indeed, the source of the *Clackamas* factors—an EEOC Compliance Manual—identifies them as relevant to whether "partners, officers, members of

boards of directors, and major shareholders qualify as employees." *Clackamas*, 538 U.S. at 448-49 (citing EEOC Compl. Man. §§ 605:0008–605:00010 (2000)); *Solon*, 398 F.3d at 633. Accordingly, the Court will apply the *Clackamas* test to aid its determination of whether Yanuzov and Zaimova are owners or employees of Victory.

### 1. Yanuzov

In his submitted affidavit, Yanuzov states that "at all times relevant to the events described in the Complaint filed by Plaintiff Shera Woodbury . . . I was the owner and CEO of the other defendant, Victory Van Lines d/b/a Great Nation Moving, LLC." Yanuzov Aff. ¶ 2. Yanuzov also asserts that he founded Victory in 2008, is currently its Chief Executive Officer ("CEO"), makes the day-to-day decisions for the company, and has a 95 percent ownership interest. Woodbury does not contest these statements and in fact has corroborated them by stating in her deposition that Yanuzov is the "certain percentage owner" of Victory and that, while she was employed by Victory, he was responsible for managing all the movers and assigning them to trucks. Woodbury Dep. at 59-61, 118, Mot. Summ. J. Ex. F, ECF No. 60-6. The pay records contain no evidence that Yanuzov drew a salary or received wages from Victory in 2013 and 2014. In her deposition, Woodbury initially disputed that Yanuzov did not receive a paycheck, but when asked how she knew that he was paid, she responded, "I don't know for sure but maybe I was just assuming when I said that." Woodbury Dep. at 119.

Based on this evidence, all six *Clackamas* factors weigh in favor of finding that Yanuzov was an owner, not an employee, of Victory in the years 2013 and 2014. Yanuzov (1) could not be hired or fired by Victory; (2) was not supervised by Victory; (3) did not report to anyone higher up in Victory; (4) had significant influence over Victory, as its founder, CEO, and manager responsible for day-to-day decisions; (5) lacked an employment contract with Victory;

and (6) shared in the profits, losses, and liabilities of Victory. Moreover, the *Clackamas* test emphasizes the "common-law touchstone of control," and Woodbury has not established a genuine dispute of material fact relating to Victory's assertion that Yanuzov had control of Victory during the relevant time period. *Clackamas*, 538 U.S. at 449. The Court therefore finds that Yanuzov was not an employee of Victory in 2013 and 2014 for the purpose of establishing the threshold number of employees necessary for Victory to be deemed an employer under Title VII and the ADA.

### 2. Zaimova

As for Zaimova, Yanuzov has stated in his affidavit that Zaimova is his wife and a five percent owner of Victory and thus shares in the profits, losses, and liabilities of Victory. Like Yanuzov, Zaimova is not listed in the pay records for 2013 or 2014, and there is no evidence that she drew a salary from Victory or had an employment contract. Thus, the fifth and sixth of the *Clackamas* factors favor a finding that Zaimova was not an employee.

The first three *Clackamas* factors, which direct the Court to assess whether Victory or someone higher up in the organization could hire, fire, or supervise Zaimova, also weigh in favor of finding that Zaimova was an owner, not an employee. According to Woodbury, Zaimova managed Victory's accounts and books and reviewed all the documents and content submitted by Victory's movers at the end of each day. Thus, Zaimova had a managerial role in the company, and there was no evidence that anyone had the power to hire, fire, or supervise her. Notably, Woodbury has offered no evidence to suggest that Yanuzov had such power over Zaimova. Rather, during her deposition, Woodbury stated that, although she was not specifically aware that Zaimova had an ownership interest in Victory, she came to understand that Zaimova owned the

company with Yanuzov because "if you're married, you know, it's sort of what's yours is both of yours." Woodbury Dep. at 125.

Indeed, as to the fourth *Clackamas* factor, Zaimova's marital relationship with Yanuzov also signifies that she likely had more capacity to influence Victory than a typical five-percent owner of a company. To the extent that the *Clackamas* test directs courts to focus "all incidents of the relationship" of the individual to the company, *Clackamas*, 538 U.S. at 451, Zaimova, by virtue of her marital relationship with Yanuzov, was better positioned than an ordinary minority owner to influence personnel and management decisions during the relevant time period.

In *Arbaugh v. Y&H Corporation*, 380 F.3d 219 (5th Cir. 2004), *rev'd on other grounds,* 546 U.S. 500 (2006), the United States Court of Appeals for the Fifth Circuit concluded that the spouses of two owners of the defendant corporation were not employees for purposes of Title VII, even though they were included on the payroll and had taxes deducted from their wages, because they were not supervised by others, shared in the profits, losses, and liabilities of the corporation and, due to their partnership interest, could not be simply fired if the business relationship with their husbands deteriorated. *Id.* at 229-30. By contrast, in *Smith v. Castaways Family Diner*, 453 F.3d 971, 977-81 (7th Cir. 2006), the court held that the mother and husband of the sole proprietor of restaurant were employees even though they managed the restaurant and were not supervised by the proprietor, largely because they lacked an ownership interest in the business. *Id.* at 972-73, 981. Here, where Zaimova had an ownership interest and could not simply be terminated, and where she was not even on the payroll like the spouses in *Arbaugh*, the Court concludes that she was not an employee of Victory in 2013 and 2014 for purposes of Title VII and the ADA.

### D.     Additional Employees

Although the pay records show that Victory did not have 15 employees during 2013 and 2014 within the meaning of Title VII and the ADA, Woodbury argues that the records are falsified or incomplete. While the submitted records appeared to have missing pages based on gaps in the page numbers, Victory has addressed this issue by supplementing the record, pursuant to the Court's request, with the missing pages. *See* 2013 Pay R., Supp. Mot. Summ. J. Ex. E, ECF No. 67-2; 2014 Pay R., Supp. Mot. Summ. J. Ex. C, ECF No. 67-1. The supplemental documents reveal that the originally omitted pages merely repeat information contained in the preceding pages relating to each employee; summarize the total earnings for each employee over the course of the year; and reflect what Victory refers to as "null data," which are system-generated notations by the Wells Fargo Business Payroll Services System reflecting no earnings for pay periods in which an employee no longer worked for Victory. 2014 Pay R. at 2-3 & n.1.

As an initial matter, Woodbury has asserted that she knows that Victory employed more than 15 employees during the relevant time period because at one point, Yanuzov turned away her best friend's boyfriend who needed a job because Victory already had 18 employees and was "completely booked." Woodbury Dep. at 76. In his affidavit, Yanuzov denies ever turning away any prospective employee because Victory was fully staffed, and states that Victory never had 18 employees at one time. This dispute, however, is not sufficient by itself to raise a genuine dispute of material fact as to the number of Victory employees in 2013 and 2014 because even if Victory was fully staffed with 18 employees at a single point in time, that would not necessarily mean that at least 15 of those 18 employees worked for 20 or more work weeks during a single year.

Next, in support of her claim that the pay records either failed to include, or undercounted the work performed by, certain Victory employees, Woodbury named 15 individuals who, she alleges, worked for Victory during 2013, 2014, or both: herself, Yanuzov, Zaimova, Deletic, "Daniel V," "Vasko," "Teti," "Stanko," Michael Heffernan, Lisa Fitzpatrick, "Emmanuel," "Carlos," "Marlo," "Jose," and "David." Woodbury Dep. at 42-64. She also pointed to four unnamed men in a set of photographs from her wedding who, she claims, were employed by Victory during some or all of the relevant time period.

As discussed above, Yanuzov and Zaimova are appropriately classified as owners, not employees. Woodbury, Deletic, Heffernan, and Fitzpatrick are all in included in Victory's pay records, though there remains a genuine dispute of material fact as to the number of weeks worked by Deletic in 2013. *See supra* part III.A.1. Victory also states that the individual Woodbury identified as "Daniel V" is Daniel V. Hernandez, "Carlos" is Carlos A. Alarcon, and "Jose" is Jose Jorge Alvarado, all of whom are also included in Victory's pay records. This leaves six named individuals as unaccounted for in Victory's pay records—"Vasko," "Teti," "Stanko," "Emmanuel," "Marlo," and "David"—and the four unnamed men identified from photographs.

Woodbury explained in her deposition that she knew these 10 individuals were employed by Victory because she was personally responsible for running Victory's office when Yanuzov was away. When Yanuzov was out of the office, Woodbury scheduled which personnel were assigned to a particular move, and when those individuals came into Victory's office, Woodbury gave them the moving truck keys and necessary supplies. At times, she had to make last-minute changes to the schedule and find movers to handle particular jobs. There were sometimes five moves per day, usually with three movers assigned to each truck. Woodbury knew the first name

of the foreman for each truck but did not know the names of the "minions" who constituted the two other movers assigned to each truck. Woodbury Dep. at 63.

Although the information provided by Woodbury relating to some of these individuals is too vague to rely upon, Woodbury gave more specific information about at least three of them, including regarding her certainty that they accumulated 20 or more work weeks in 2013. She specifically identified "Vasko" and his girlfriend "Teti," with whom Woodbury and her husband Deletic had double-dated. She testified that Vasko was a foreman who began working at Victory before Woodbury joined the company in 2012 and worked full time during the duration of his employment. Although initially Woodbury had difficulty remembering the exact date that Vasko left and suggested it might have been at the end of 2012 or early 2013, she later pegged it to when Deletic left because Vasko and Deletic left to form their own business. As discussed above, Victory's pay records show that Deletic received a paycheck on May 24, 2013, just over 20 weeks into the calendar year, and Woodbury testified that she was confident that Deletic worked up through June 2013 based on when their birthdays and her anniversary fell on the calendar. Woodbury also stated that she knew that Vasko worked 20 or more weeks in 2013 because she saw him at Victory's office every day when he turned in paperwork for his moves each day. She also recalled receiving complaints from customers in 2013 about being overcharged for moves for which Vasko was the foreman. Finally, Woodbury identified Vasko in several photographs from her wedding which were exhibits at her deposition.

As for Teti, Vasko's girlfriend, Woodbury testified that Teti was Victory's receptionist and sat in the office across from Zaimova. Woodbury stated that she met Teti a few days before she got married on August 8, 2012, and that Teti started working at Victory that summer. She testified that Teti left Victory in the summer of 2013 or later, based on her recollection that she

and Teti ran a five-kilometer race in Washington, D.C. that summer, while Teti was still employed by Victory. According to Woodbury, she knew that Teti worked full time and for more than 20 weeks in 2013 because Woodbury saw her every day, Teti transferred calls to Woodbury, and Woodbury regularly walked past her desk to mark moves on the office calendar. Woodbury and Teti also socialized together after work. Finally, Woodbury also identified Teti in several of the photographs reviewed at her deposition.

Woodbury also provided detailed and unequivocal testimony about an employee named Emmanuel. She described his physical appearance and testified that he was a Hispanic mover—not a foreman—who worked full time at Victory during her entire tenure from 2012 until 2014. She stated that she was certain that Emmanuel worked more than 20 weeks between January 1, 2013 and December 31, 2013 because she saw him loading and unloading materials onto and off of trucks in a storage area that was attached to the office in which she worked. Woodbury saw him doing so when she took regular smoking breaks in that storage area.

Viewed in the light most favorable to Woodbury, she has asserted sufficient facts to establish that at least Vasko, Teti, and Emmanuel were employees of Victory in 2013. Although her assertions are uncorroborated, she has offered specific details based on personal knowledge, such as the fact that she and her husband double-dated with Vasko and Teti, that Vasko stayed at Victory until he and her husband began a new business in approximately June 2013, that Teti was a receptionist who sat across from Zaimova and was there every day, and that she regularly saw Emmanuel loading trucks during her smoking breaks.

At the summary judgement stage, a non-moving party's uncorroborated testimony can be sufficient to raise a genuine dispute of material fact, especially when that testimony is specific and consistent with the party's other statements in the case. *See, e.g.*, *Davis v. Zahradnick*, 600

F.2d 458, 460 (4th Cir. 1979) (per curiam) (holding that summary judgment is not warranted when there is conflicting testimony requiring credibility determinations); *United States v. Currency, U.S.*, *$147,900.00*, 450 F. App'x 261, 266 (4th Cir. 2011) (reversing a grant of summary judgment where the non-moving party provided a "specific and consistent," but uncorroborated, account about the source of a certain sum in question, because "corroboration is unnecessary to establish a genuine issue of material fact"); *Nilson v. Historic Inns Grp. Ltd.*, 903 F. Supp. 905, 908-09 (D. Md. 1995) (denying summary judgement in an employment discrimination case because reconciling the conflicting testimony of two employees required a credibility determination); *see also Am. Metal Forming Corp. v. Pittman*, 52 F.3d 504, 507 (4th Cir. 1995) (holding that conflicting affidavits raise a genuine issue of material fact when they are consistent with affiant's prior testimony).

Here, Woodbury has provided more than just cursory, conclusory allegations that Victory had additional employees not reflected in pay records. Woodbury's testimony is detailed and based on personal knowledge. The additional employees in question include her former husband and two individuals with whom they double-dated and who attended their wedding. She had a position at Victory that provided her with the ability to personally observe their work activities during the relevant time period. She also offered a plausible explanation for the lack of formal records for Vasko, Teti, and Emmanuel: that they did not have a legal right to work in the United States. *See Jones*, 2012 WL 2917057, at *2-3 (holding that the plaintiff's affidavit stating that the defendant had additional employees not listed in pay records, including several paid "under the table," created a genuine issue of material fact precluding summary judgment for the defendant). Finally, where it is undisputed that Victory was a moving company that had as many as 15 individuals working three different moves on any given day, it is entirely plausible, if not

21

likely, that such a company would have had more than 15 employees who worked more than 20 weeks of the year, particularly including administrative staff such as Woodbury. Thus, Woodbury's testimony is sufficient to create a genuine issue of material fact on the issue of the number of Victory employees in 2013.

## CONCLUSION

For the foregoing reasons, Victory's Motion for Summary Judgment is DENIED. A separate Order shall issue.

Date: November 6, 2018

THEODORE D. CHUANG
United States District Judge